E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JOSEPH DE LEON (Cal. Bar No. 313471)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-7280
     Facsimile: (213) 894-0141
     Email:    Joseph.De.Leon@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 23-cr-00126-FLA-2 |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION |
| v. | Hearing Date: April 5, 2024 |
| MARC JESUS LOPEZ, et al., | Hearing Time: 10:00 a.m. |
| Defendants. | Location: Courtroom of the Hon. Fernando L. Aenlle-Rocha |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Joseph De Leon, hereby files its sentencing position regarding defendant JUAN NICOLAS BENITEZ.

//

//

//

//

The government's sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Investigation Report, and any other evidence or argument that the Court may permit.  The government respectfully requests the opportunity to supplement its position as may become necessary.

Dated: March 12, 2024　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　E. MARTIN ESTRADA
　　　　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　　　　　　　MACK E. JENKINS
　　　　　　　　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　　　　　　　　Chief, Criminal Division


　　　　　　　　　　　　　　　　　/s/ Joseph De Leon
　　　　　　　　　　　　　　　　　JOSEPH DE LEON
　　　　　　　　　　　　　　　　　Assistant United States Attorney

　　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　　UNITED STATES OF AMERICA

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On or about February 3, 2022, in Los Angeles County, within the Central District of California, defendant JUAN NICOLAS BENITEZ ("defendant"), knowingly possessed forty-seven rounds of 9mm caliber ammunition knowing that he had been convicted of a misdemeanor crime of domestic violence, namely, Corporal Injury to a Spouse, in violation of California Penal Code Section 273.5.  Pursuant to a Plea Agreement, defendant pleaded guilty to being a prohibited person in possession of ammunition.  (Dkt. 140.)

The government concurs with the United States and Pretrial Services Office's ("Probation") calculation of defendant's offense level of 17, criminal history category of IV, and resulting Guidelines range of 37-46 months' incarceration.  For the reasons outlined below, the government recommends a low-end Guidelines sentence of 37 months' imprisonment, three years' supervised release, and a $100 special assessment.  Such a sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a).

**II.   STATEMENT OF FACTS**

On February 3, 2022, Los Angeles Police Department ("LAPD") officers parked behind a black Dodge sedan (the "Dodge") where the defendant was sitting in the front passenger seat.  (Plea Agreement at 7-8, Dkt. 132; PSR ¶¶ 18-19.)  Officers found two rounds of 9mm caliber ammunition in one of defendant's pockets.  (Plea Agreement at 8; PSR ¶ 19.)  An officer then searched the Dodge and found: (1) underneath the driver's seat, two Glock-style, Polymer80 9mm caliber handguns that did not bear legitimate manufacturing marks or serial

numbers (collectively, the "Ghost Guns"), which were loaded with a total of twelve rounds of 9mm caliber ammunition; and (2) two rounds of 9mm caliber ammunition inside one of the pockets of a pair of jeans found in the rear passenger seat of the Dodge.  (Plea Agreement at 8; PSR ¶ 19.)

On February 7, 2022, an LAPD detective again searched the Dodge pursuant to a California state search warrant and found – hidden in a back compartment of the center console – forty-five rounds of 9mm caliber ammunition in two black high-capacity pistol magazines, each of which could hold more than fifteen rounds of ammunition (collectively, the "Large-capacity Magazines").  (Plea Agreement at 8; PSR ¶ 20.)  On February 3, 2022, the Large-capacity magazines were in close proximity to the Ghost Guns, as they were all located in the Dodge.  (Plea Agreement at 8; PSR ¶ 20.)  Both of the Ghost Guns were semiautomatic firearms that could accept and attach to the Large-capacity magazines.  (Plea Agreement at 8; PSR ¶ 20.)

On February 3, 2022, defendant knowingly possessed a total of the forty-five rounds of 9mm caliber ammunition found in the Large-capacity Magazines and the two rounds of 9mm caliber ammunition found in his pocket (collectively, the "Forty-seven Rounds").  (Plea Agreement at 8; PSR ¶ 21.)  At the time defendant possessed the Forty-seven Rounds, defendant had previously been convicted, and knew that he had been convicted of, a misdemeanor crime of domestic violence, namely, Corporal Injury to a Spouse, in violation of California Penal Code Section 273.5.  (Plea Agreement at 8; PSR ¶ 22.)

**III. SENTENCING GUIDELINES CALCULATION**

In the PSR, Probation determined that defendant had a base offense level of 20 because the offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine and the defendant was a prohibited person at the time he committed the instant offense.  (PSR ¶ 33; U.S.S.G. § 2K2.1(a)(4)(B).)  Probation also concluded that defendant should receive a three-level decrease pursuant to U.S.S.G. §§ 3E1.1(a)-(b) because he demonstrated acceptance of responsibility for the offense.  (PSR ¶ 40-41.)

Probation also determined that defendant's prior criminal convictions resulted in a total criminal history score of 9.  (Id. ¶ 61.)  Based on this criminal history score, Probation determined that defendant falls within criminal history category IV.  (Id.)

Based on a total offense level of 17 and a criminal history category IV, Probation determined that the advisory Guidelines imprisonment range is 37 to 46 months, followed by a term of supervised release of one to three years.  (Id. ¶¶ 119, 122.)  The government agrees with all of these calculations.

**IV.   THE GOVERNMENT RECOMMENDS 37 MONTHS' IMPRISONMENT AND A 3-YEAR TERM OF SUPERVISED RELEASE**

The government recommends that the Court sentence defendant to a low-end Guidelines sentence of 37 months' imprisonment, followed by a three-year term of supervised release; a $100 special assessment; and no fine, as it appears defendant lacks the ability to pay a fine and any money he does earn would be best used to support himself and his dependents.  (PSR ¶¶ 114-115.)  Such a sentence is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).

3

**A. Nature and Circumstances of the Offense**

The nature and circumstances of defendant's offense support a sentence of 37 months' imprisonment, followed by a 3-year term of supervised release.  18 U.S.C. § 3553(a)(1).  Defendant possessed Forty-seven Rounds of 9mm caliber ammunition, forty-five rounds of which were found in Large-capacity magazines that were in close proximity to the Ghost Guns. (PSR ¶ 19-20.)  Indeed, defendant knew that he could not lawfully possess the ammunition because he had previously been convicted of a misdemeanor crime of domestic violence.  (Id. ¶ 18.)

**B. History and Characteristics of Defendant**

Defendant's history and characteristics also warrant the government's recommended sentence.  See 18 U.S.C. § 3553(a)(1).  In aggravation, defendant has several convictions and arrests, including for driving under the influence and for domestic violence related incidents.  (PSR ¶¶ 48-57, 65.)

In mitigation, however, it is clear defendant has a drug use problem that began in high school when his parents got divorced. (PSR ¶¶ 79, 81.)  Specifically, defendant began using methamphetamine when he was 17 years old, and used methamphetamine on a daily basis until the time of his arrest for the instant offense. (Id.) Defendant has accepted responsibility for the instant offense, and has indicated that he is open to substance abuse treatment at this time, and would like to pursue a GED.  (Id. ¶¶ 40-41, 100, 105.)

The government submits that a low-end Guidelines, 37-month sentence appropriately balances these aggravating and mitigating factors, and appropriately accounts for his acceptance of responsibility.  See USSG § 3553(a)(1).

**C.   The Need for the Sentence to Reflect the Seriousness of the Offenses, Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, and Protect the Public**

The sentence must satisfy the need to punish defendant, as well as society's need to reflect the seriousness of the offense; promote respect for the law; provide just punishment; afford adequate deterrence; and protect the public.  18 U.S.C. § 3553(a)(2).  Here, the government's recommended sentence will provide deterrence both to defendant and to others who might otherwise be inclined to perpetrate a similar crime.  Finally, a three-year term of supervised release following imprisonment will provide an additional layer of deterrence and protection to the community.  See 18 U.S.C. § 3583(c) (factors to be considered in including a term of supervised release).  Defendant's criminal history, including his history of domestic violence, demonstrates that a three-year term of supervised release is necessary to effectively monitor defendant post-release.  See U.S.S.G. § 5D1.1, comment n.3(B) ("The court should give particular consideration to the defendant's criminal history . . . .  In general, the more serious the defendant's criminal history, the greater the need for supervision.").

**D.   The Need to Avoid Unwarranted Disparities**

Section 3553(a)(6) requires the Court to minimize sentencing disparities among similarly situated defendants.  One way of doing so is to correctly calculate the Guidelines range and then sentence defendants within that range.  See Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges.").  Here, under the correctly calculated Guidelines range,

5

other defendants "with similar records who have been found guilty of similar conduct" as defendant, can expect a prison sentence between 37 and 46 months' imprisonment.  See U.S.S.G. § 5A (Sentencing Table).  Consequently, the government's recommended sentence, which is at the low end of that range, avoids an unwarranted disparity with similarly situated defendants.

### E.    Fine

The government agrees with Probation that defendant does not appear to have the ability to pay a fine, and that any income he earns upon release should be used to support himself and his dependents.  (PSR ¶ 115.)

## V.    CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to a low-end Guidelines sentence of: 37 months' imprisonment; three years' supervised release; a mandatory $100 special assessment; and no fine.