E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JOSEPH DE LEON (Cal. Bar No. 313471)
JEREMY K. BEECHER (Cal. Bar No. 301272)
Assistant United States Attorneys
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-7280/5429
    Facsimile: (213) 894-0141
    Email:    Joseph.De.Leon@usdoj.gov
            Jeremy.beecher@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 2:23-cr-00126-FLA |
|---|---|
| Plaintiff, | <u>GOVERNMENT'S SENTENCING POSITION</u> |
| v. | Hearing Date: May 31, 2024 |
| MARC JESUS LOPEZ, | Hearing Time: 10:00 a.m. |
| Defendant. | Location: Courtroom of the Hon. Fernando L. Aenlle-Rocha |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Joseph De Leon, hereby files its sentencing position regarding defendant MARC JESUS LOPEZ.

//

//

//

The government's sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Investigation Report, and any other evidence or argument that the Court may permit. The government respectfully requests the opportunity to supplement its position as may become necessary.

Dated: May 17, 2024

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

        /s/
JOSEPH DE LEON
JEREMY K. BEECHER
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On or about February 3, 2022, in Los Angeles County, defendant Marc Jesus Lopez, knowingly possessed ammunition that was found in two loaded Glock-style 9mm caliber "ghost" handguns and in two high-capacity magazines.  Defendant possessed the ammunition knowing that he had been convicted of six felonies, including four crimes of violence, thereby making him an Armed Career Criminal.  Additionally, defendant possessed the ammunition after having been convicted of a misdemeanor crime of domestic violence.  On January 17, 2024, a jury found defendant guilty of possessing ammunition in violation of 18 U.S.C. §§ 922(g)(1) and (g)(9).  (Dkt. 161.)  Defendant then agreed in open Court to the fact that his predicate convictions under the Armed Career Criminal Act occurred on three or more different occasions.

The government concurs with the United States and Pretrial Services Office's ("Probation") calculation of defendant's offense level of 33, criminal history category of VI, and resulting Guidelines range of 235-293 months' incarceration.  For the reasons outlined below, the government recommends a mid-range Guidelines sentence of 264 months' imprisonment, five years' supervised release, and a $100 special assessment.  Such a sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a).

**II.   STATEMENT OF FACTS**

On January 31, 2022, Los Angeles Police Department ("LAPD") officers received a report of the defendant carjacking J.S., the mother of the defendant's child.  (Presentence Investigation Report

"PSR" ¶ 8.)  J.S. told LAPD officers that the defendant pointed a gun at her, and pushed her out of the car.[1]  (Id.)  On February 1, 2022, J.S. later located her car by tracking her cell phone, which had been inside the car, and directed LPAD officers to the location. (Id. ¶ 9.)  Officers searched the car for a firearm, but did not find one. (Id.)

On February 3, 2022, LAPD officers conduct a compliance check at the defendant's residence. (Id. ¶ 12) After learning that defendant was not home, the LAPD officers continued to monitor the area around the defendant's residence.  (Id.)  At approximately 7:05 p.m., LAPD officers spotted defendant in the driver's seat of his Dodge sedan parked outside of his home.  (Id.)  A man, later identified as co-defendant Benitez, sat in the front passenger seat, and a woman, later identified as E.G., sat in the back passenger seat.  (Id.)  The LAPD officers initiated a "felony stop," which entails a greater show of force than an ordinary traffic stop for purposes of protecting officers and the public, including having guns drawn on the suspect while he is brought into custody.  (Id.)

While officers attempted to conduct the felony stop, defendant suddenly stepped out of the driver's seat, began walking toward the LAPD officers, and refused to comply with one of the officer's demands. (Id. ¶ 13.)  Defendant was ordered to get on his stomach and cooperate, but defendant refused to comply and, instead, dared the officers to shoot him.  (Id.)  Defendant was then placed on the

---

[1] On February 25, 2022, J.S. recanted her prior statement about defendant possessing a firearm during the incident.  J.S. told LAPD officers that she had reported defendant had a firearm because she was scared and wanted him to get caught.  (PSR ¶ 11.)

ground, handcuffed, and placed under arrest for carjacking in violation of California Penal Code Section 215.  (Id.)

Benitez and E.G. initially refused to comply with the LAPD officer's orders to get out of the Dodge, but eventually exited and laid on their stomachs. (Id. ¶ 14.)  LAPD officers conducted a pat-down search of Benitez's person and found two rounds of 9mm caliber ammunition in Benitez's front left pants pocket.  (Id.) Additionally, Benitez stated that there could be firearms in the vehicle.  (Id.)  After Benitez heard an officer tell another officer he had found ammunition, Benitez voluntarily stated, "Yea, I had seen them on the floor." (Id.)  When another officer asked where the gun was, Benitez responded he did not know and that he had found the ammunition on the floor of the Dodge and placed it in his pocket. (Id.)

Officers then conducted a search of the Dodge, after confirming defendant was on probation and subject to search and seizure conditions.  (Id. ¶ 15.)  The officers' search yielded, among other things, two loaded Glock-style 9mm caliber "ghost" handguns underneath the driver's seat, each with one round in the chamber and additional rounds in the magazine, and two rounds of 9mm caliber ammunition inside the left pants pocket of a pair of jeans in the rear passenger seat. (Id.)  In total, LAPD officers recovered 16 rounds of ammunition, which included the 12 rounds in the two loaded firearms, two rounds in the pair of jeans in the rear passenger seat, and two rounds found in Benitez's pocket. (Id.)

Additionally, a bag containing methamphetamine was found in the driver's door, a glass pipe containing methamphetamine was found

3

between the driver's seat and center console, and two baggies of methamphetamine were found on the floor. (Id. ¶ 16.)

The Defendant waived his Miranda rights and provided a statement. (Id. ¶ 17.) As detectives led Benitez to the interview room, they passed the defendant, and a detective heard the defendant yell out in Spanish for Benitez to keep his mouth shut. (Id.) When a LAPD detective asked Benitez if he knew where the guns were found in the Dodge, Benitez replied, "[w]here I told them . . . under the seat. The driver seat." (Id.)

The following day, on February 4, 2022, defendant made several statements to Benitez in recorded jail calls, including the following:

- Defendant told Benitez that because Benitez had no strikes, "they can't give [Benitez] the max time," and asked Benitez to say the firearms were Benitez's instead of defendant's (id. ¶ 22(i)); and

- Defendant told Benitez to "find a female" who would take responsibility and blame for having the guns, and that defendant would be willing to pay her or anyone else to take the blame for them (id. ¶ 22(ii)).

On February 7, 2022, law enforcement searched defendant's Dodge pursuant to a search warrant and found two black, high-capacity magazines hidden in the bottom back compartment of the center console. (PSR ¶ 18.) The magazines contained a total of 45 9mm caliber ammunition. (Id.)

At the time defendant possessed the ammunition recovered by LAPD in this case, defendant knew that he had been convicted of six felonies, each punishably by a term of imprisonment exceeding one

4

year. (PSR ¶ 19.)  Specifically, defendant had committed the following four crimes of violence punishable by a term of imprisonment exceeding one year:

- On March 25, 2011, Lopez was convicted of Assault by Means Likely to Produce Great Bodily Injury, in violation of California Penal Code Section 245(a)(1), in Los Angeles County Superior Court; Docket No. SA076671;
- On November 26, 2012, Lopez was convicted of Assault by Means Likely to Produce Great Bodily Injury, in violation of California Penal Code Section 245(a)(4), in Los Angeles County Superior Court, Docket No. SA081508;
- On June 17, 2015, Lopez was convicted of Injuring a Spouse, Cohabitant, in violation of California Penal Code Section 273.5(f)(2), in Los Angeles County Superior Court; Docket No. SA090508; and
- On March 13, 2017, Lopez was convicted of Assault with Bodily Injury, in violation of California Penal Code Section 245(a)(4), in Los Angeles County Superior Court; Docket No. SA094939.

In addition, defendant possessed the ammunition knowing that he been convicted of a misdemeanor crime of domestic violence, namely, Domestic Battery, in violation of California Penal Code Sections 242-243(e)(1).  (Id. ¶ 20)

**III. SENTENCING GUIDELINES CALCULATION**

In the PSR, Probation determined that defendant had a base offense level of 26 because the offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine and because the defendant committed the instant offense subsequent to

5

sustaining at least two felony convictions for a crime of violence. (PSR ¶¶ 28-36.)  Probation also concluded that because defendant attempted to "unlawfully influence" Benitez to take responsibility for the firearms and/or find a female that defendant would be willing to pay to take responsibility for the firearms, defendant should receive a two-level enhancement for attempting to obstruct justice pursuant to U.S.S.G. § 3C1.1.  (Id. ¶ 43.)  Finally, Probation concluded that because Lopez is an Armed Career Criminal and subject to an enhanced sentence under the provisions of the Armed Career Criminal Act, 18 U.S.C. § 924(e), pursuant to U.S.S.G. §§ 4B1.4(b)(3)(B), the defendant's offense level increases to 33. (Id. ¶ 50.)

Probation also determined that defendant's prior criminal convictions resulted in a total criminal history score of 24.  (Id. ¶ 20.)  Based on this criminal history score, Probation determined that defendant falls within criminal history category VI.  (Id.)

Based on a total offense level of 33 and a criminal history category VI, Probation determined that defendant's advisory Guidelines imprisonment range is 235 to 293 months, followed by a term of supervised release of two to five years.  (Id. ¶ 75.) The government agrees with all of these calculations.

**IV.  THE GOVERNMENT RECOMMENDS 264 MONTHS' IMPRISONMENT AND A 5-YEAR TERM OF SUPERVISED RELEASE**

The government recommends that the Court sentence defendant to a mid-range Guidelines sentence of 264 months' imprisonment, followed by a five-year term of supervised release; a $100 special assessment; and no fine, as it appears defendant lacks the ability to pay a fine and any money he does earn would be best used to support himself and

6

his minor daughter. (PSR ¶ 68.) Such a sentence is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).

### A. Nature and Circumstances of the Offense

The nature and circumstances of defendant's offense support the government's recommended sentence. 18 U.S.C. § 3553(a)(1). On January 31, 2022, J.S., the mother of defendant's child, reported that defendant had carjacked her at gun point. (Id. ¶ 8). While J.S. later walked back her statement about defendant possessing a firearm during the incident (id. ¶ 11), defendant later pled guilty to a felony for taking J.S.'s vehicle without her consent. (Id. ¶ 14.).

As a result of defendant's conduct from January 31, 2022, LAPD officers later found defendant on February 3, 2022, parked outside of his house, possessing two loaded "ghost guns," with no serial number, and two large-capacity magazines that contained forty-five rounds of 9mm caliber ammunition. (Id. ¶¶ 15, 18, 27.) The large-capacity magazines were hidden in the bottom back compartment of the center console in the Dodge. (Id. ¶ 18.) Defendant possessed these firearms and ammunition after having been convicted of six felonies and a misdemeanor crime of domestic violence. (PSR ¶¶ 19, 20.) Considering these circumstances, a significant sentence is warranted to meet the goals of 18 U.S.C. § 3553(a).

### B. History and Characteristics of Defendant

Defendant's history and characteristics also warrant the government's recommended sentence. See 18 U.S.C. § 3553(a)(1). In aggravation, from March 2010 to as recent as January 31, 2022, defendant has a total of 11 adult criminal convictions. (PSR ¶¶ 4-

14.) Four of these convictions are for violent felonies, which are briefly described below.

- ***March 25, 2011, Assault by Means Likely to Produce Great Bodily Injury:*** defendant, along with four other individuals (the "suspects"), punched and kicked a victim while demanding money. The suspects used a red brick, golf club, a walking cane, and nun chucks as weapons in the assault of the victim. (Id. ¶ 5.)

- ***November 26, 2012, Assault by Means Likely to Produce Great Bodily* Injury**: defendant assaulted J.S. by means of force likely to produce great bodily injury. (Id. ¶ 8.) The victim (J.S.) in this prior conviction is the same victim who defendant reportedly carjacked on January 31, 2022. (Id. ¶ 8.)

- ***June 17, 2015, Injury a Spouse, Cohabitant***: defendant became angry at J.S. for not making him breakfast in bed and a verbal argument escalated to a physical fight during which defendant punched J.S. three to four times in the face. (Id. ¶ 10.) Again, the victim in this prior conviction (J.S.) is the same victim who defendant reportedly carjacked on January 31, 2022. (Id. ¶ 8.)

- ***March 13, 2017, Assault with Bodily Injury***: defendant used force and fear to take the personal property away from a victim. (Id. ¶ 11.)

Accordingly, defendant is a violent felon who continues to arm himself with firearms and ammunition while on Post Release Community Supervision, as evident by his most recent arrest on January 8, 2023. (PSR ¶ 25.) There, like in the instant offense, defendant was

8

stopped while driving, got out of the vehicle, and dared the officers to shoot him. (Id.) After detaining the defendant, officers recovered a firearm in the center console. (Id.) What is most alarming is that two of defendant's prior violent felonies include a victim who is the mother of defendant's daughter, and who, at least as of January 31, 2022, defendant has continued to violently abuse. (See id. ¶¶ 8, 10, 11.)

In addition to the defendant's violent criminal history, defendant also tried to unlawfully obstruct justice by asking co-defendant Benitez to take responsibility for the firearms in the instant offense. (Id. ¶ 42(i).) Defendant went so far as to ask Benitez to "find a female that would take responsibility and blame for having the guns." (Id. ¶ 42(ii).))

In mitigation, however, defendant grew up in a high crime area that was gang infested, his family struggled financially, and he had an absent father who was abusive. (Id. ¶¶ 38-39.) Additionally, defendant has also been suffering from depression since 2015, which was amplified by his father's passing in 2021, his grandmother's passing in 2022, and being away from his daughter while incarcerated. (Id. ¶ 49.) Finally, defendant has indicated that he is interested in learning a trade and taking college courses while in custody. (Id. ¶ 58.)

The government submits that a mid-range Guidelines, 264-month sentence appropriately balances these aggravating and mitigating factors, and appropriately accounts for his acceptance of responsibility. See USSG § 3553(a)(1).

9

**C.   The Need for the Sentence to Reflect the Seriousness of the Offenses, Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, and Protect the Public**

The sentence must satisfy the need to punish defendant; reflect the seriousness of the offense; promote respect for the law; provide just punishment; afford adequate deterrence; and protect the public. 18 U.S.C. § 3553(a)(2).  Here, the government's recommended sentence will provide deterrence both to defendant and to others who might otherwise be inclined to perpetrate a similar crime.

Finally, a five-year term of supervised release following imprisonment will provide an additional layer of deterrence and protection to the community.  See 18 U.S.C. § 3583(c) (factors to be considered in including a term of supervised release).  Defendant's criminal history, including his four prior violent felony convictions and history of domestic abuse, demonstrates that a five-year term of supervised release is necessary to effectively monitor defendant post-release.  See U.S.S.G. § 5D1.1, comment n.3(B) ("The court should give particular consideration to the defendant's criminal history . . . .  In general, the more serious the defendant's criminal history, the greater the need for supervision.").

**D.   The Need to Avoid Unwarranted Disparities**

Section 3553(a)(6) requires the Court to minimize sentencing disparities among similarly situated defendants.  One way of doing so is to correctly calculate the Guidelines range and then sentence defendants within that range.  See Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges.").  Here, under the correctly calculated Guidelines range,

other defendants "with similar records who have been found guilty of similar conduct" as defendant, can expect a prison sentence between 235 and 293 months' imprisonment. See U.S.S.G. § 5A (Sentencing Table). Consequently, the government's recommended sentence, which is at the middle of that range, avoids an unwarranted disparity with similarly situated defendants.

### E. Fine

The government agrees with Probation that defendant does not appear to have the ability to pay a fine, and that any income he earns upon release should be used to support himself and his minor daughter. (PSR ¶ 68.)

## V. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to a mid-range Guidelines sentence of: 264 months' imprisonment; five years' supervised release; a mandatory $100 special assessment; and no fine.